IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TRESHA DAVIS,

     Petitioner,

v.                                CASE NO. 5:14-cv-75-RV-GRJ

SECRETARY, FLA. DEP'T
OF CORRECTIONS,

     Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Petitioner initiated this case and filed a *pro se* amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 4.) The petition stems from Petitioner's Jackson County conviction for drug trafficking and grand theft. In her amended petition, Petitioner asserts the following grounds for relief: (1) trial counsel was ineffective for failure to timely file a motion to suppress statements made to police; (2) the trial court judge rendered disparate treatment between her and her co-defendant; and (3) the sentence imposed constitutes a vindictive sentence. (ECF No. 4.) Respondent filed a response and appendix with relevant portions of the state-court record, arguing that Petitioner's claims are unexhausted, procedurally defaulted, and meritless. (ECF No. 13.) Petitioner subsequently filed a reply. (ECF No. 17.) Upon due

consideration of the amended petition, response, reply, and the state court record, the undersigned recommends that the amended petition be denied.[1]

## I. Summary of State Court Proceedings

Petitioner was a licensed pharmacist when she allegedly stole and sold several thousand hydrocodone pills and several hundred Loratab tablets. (ECF No. 13-1 at 5.)[2]  On July 16, 2010, Petitioner was charged with two counts: (1) trafficking in violation of Florida Statute §893.135(i)(c)1c, a first degree felony; and (2) grand theft of pills greater than $300.00, a third degree felony. (*Id.* at 7.)

On December 20, 2010, Petitioner filed a motion to recuse the trial judge. (*Id.* at 15.) The motion alleged that although the parties had reached a plea agreement that would entail Petitioner entering a plea to a lesser included offense and being sentenced to the Department of Corrections for three years, the trial judge refused to accept the plea. (*Id.* at 15–16.) In her initial brief on direct appeal, Petitioner expounded on her argument that the

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

[2] Because the page numbers throughout the exhibits (ECF No. 13-1) are inconsistent, the page numbers for the exhibits to which the Court cites refer to the ECF page numbers at the top of the page.

trial judge interfered with the bargaining process during a pretrial conference on October 5, 2010. Petitioner pointed out that the trial judge said at the pretrial conference "this might be one of those cases where she's going to have to plea straight up or go to trial." (*Id.* at 82.) The motion to recuse the judge was denied, but was never rebutted or addressed on the record by the State. (*Id.* at 81.)

Pursuant to a negotiated plea agreement, at a pretrial conference on January 19, 2011, Petitioner changed her plea from not guilty to a plea of *nolo contendre* to trafficking under Florida Statute § 893.135(1)(C)1a, a lesser offense to that charged in Count 1, and to grand theft as charged in Count II. (*Id.* at 81.) In accordance with the terms of the plea agreement petitioner was sentenced to eight years' imprisonment on Count 1, with three years of the sentence as the minimum mandatory sentence, and to a concurrent sentence of five years' imprisonment on Count 2, with 67 days credit for time served. (*Id.* at 147.)

Petitioner appealed her sentence and conviction, arguing that (1) the sentence constituted an illegal and vindictive sentence in violation of the Due Process Clause of the Fourteenth Amendment; (2) the general plea to grand theft on Counts 1 and 2 of the same trafficked pills violates double

jeopardy principles under state and federal law; and (3) Florida Statute §
893.135 is unconstitutional and, therefore, her conviction under that
chapter should be vacated. (*Id.* at 73–74.) The First District Court of
Appeal ("First DCA") *per curiam* affirmed without opinion on February 15,
2012. (*Id.* at 167; *Davis v. State*, 79 So. 3d 23 (Fla. 1st DCA 2012).) The
mandate followed on March 2, 2012. (ECF No. 13-1 at 168.)

On September 4, 2012, Petitioner filed a motion for postconviction
relief pursuant to Fla. R. Crim. P. 3.850. (*Id.* at 170.) Petitioner filed a *pro
se* amendment to the motion on September 13, 2012. (*Id.* at 182.) The
circuit court, however, dismissed Petitioner's motion and amendment, but
with leave to amend within thirty days. (*Id.* at 186.) Thus, on January 3,
2013, Petitioner filed an amended motion for postconviction relief asserting
seven grounds for relief: (1) a violation of the Due Process Clause of the
Fourteenth Amendment because the statute Petitioner was sentenced
under had been declared unconstitutional; (2) ineffective assistance of
counsel for failure to file a pre-trial motion to dismiss the original trafficking
charge, which caused Petitioner to enter an involuntary plea; (3) ineffective
assistance of counsel for failure to file a pre-trial motion to dismiss the
grand theft charge; (4) ineffective assistance of counsel for failure to

challenge or have the information dismissed, causing Petitioner to enter an involuntary plea; (5) ineffective assistance of counsel for misadvising Petitioner to enter an open plea to the charges; (6) ineffective assistance of counsel for failure to file a motion to suppress coerced statements, causing her plea to be involuntary; and (7) a violation of the Equal Protection Clause of the Fourteenth Amendment for disparate treatment between Petitioner and her co-defendant (*Id.* at 188–97.)

On April 5, 2013, the circuit court summarily denied Petitioner's amended motion in part (Ground 1) and directed the State to file a response as to the remaining grounds. (*Id.* at 214–16.) Following the State's response, (*Id.* at 292–99), the circuit court summarily denied the remaining grounds on July 22, 2013. (*Id.* at 356–63.)

Petitioner appealed the circuit court's denial of her amended motion for postconviction relief, asserting that the circuit court erred in denying Grounds Six and Seven of her amended motion. (*Id.* at 453–65.) The First DCA, however, *per curiam* affirmed without opinion. (*Id.* at 469.)

Petitioner then filed her original petition for writ of habeas corpus in this Court on March 17, 2014. (ECF No. 1.) She filed her amended petition ("Petition") on March 27, 2014. (ECF No. 4.)

## II.  Section 2254 Standard of Review

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging her conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the

failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306.

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); *see also* § 2254(e)(1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but

decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74–77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404–06 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams,* 529 U.S. 362). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a

federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 412–13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

In *Gill*, the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests. The court acknowledged the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference. 633 F.3d at 1288 (citing *Harrington v. Richter*, 562 U.S. 86 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or

unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S. Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir. 2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only

question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that her counsel's performance was below an objective and reasonable professional norm, and (2) that she was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry her burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that h[er] counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244

(11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

When the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain

federal habeas relief is a difficult one. *Harrington*, 562 U.S. at 102. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 100 (quotation marks omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*.

Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

### III.  Discussion

### A.   *Ground One: Ineffective Assistance of Counsel*

Petitioner claims trial counsel rendered ineffective assistance by failing to timely file a motion to suppress statements she made to police "due to coercion and deception," thereby rendering the statements involuntary. (ECF No. 4 at 15.) Petitioner argues that the only evidence against her were confessions she made to her employer's loss-prevention

employee and Detective Arnold of the Jackson County Sheriff's

Department. (*Id.*) She claims that counsel's failure to file a motion to

suppress her confessions to law enforcement rendered counsel ineffective

because, "absent this confession[,] the state would not have had any

evidence to convict her, and she would have elected to pursue a jury trial

rather than open plea to the bench." (*Id.* at 16.)

Petitioner presented this claim to the state circuit court as Ground Six

of her amended motion for post-conviction relief. (ECF No. 13-1 at

195–96.) The state circuit court denied relief and wrote as follows:

> [The Defendant] does not allege that her statements to law
> enforcement were coerced; rather, she claims that Walmart's
> loss-prevention employee coerced her into giving a confession by
> telling her that he had her on DVD video stealing hydrocodone
> pills, when the video only showed her leaving the pharmacy with
> a paper bag. She claims that her statement to Walmart's loss-
> prevention employee was coerced by an employee who was
> deceptive. She agues that the statement she gave to JCSO
> Investigator Arnold was given only after her coerced statement to
> the Walmart employee. She claims that counsel was ineffective
> in failing to move to suppress her coerced confession.
>
> However, the flaw in the Defendants argument is that
> Walmart's loss-prevention employee was a not a government
> actor. There is no evidence that the loss-prevention employee
> was acting as an agent of law enforcement. Walmart
> management was already questioning the Defendant in the store
> when Inv. Arnold arrived, and there is no evidence that Walmart
> did anything at the direction of law enforcement. Walmart
> discovered the crime, confronted its employee with the evidence
> and questioned her while terminating her employment, and called
> the police. The Defendant has no right to be free from coercion in

this context or to have any statements to Walmart employees suppressed.

(*Id.* at 297.)

The state circuit court's denial of relief constitutes an adjudication of the merits and is entitled to double deference. Therefore, this Court's review is limited to whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. Nothing suggests, however, that the circuit court's decision was based on an unreasonable application of clearly established federal law or an unreasonable determination of facts.

Petitioner has not shown the requisite deficient performance and prejudice, as required by *Strickland*. Petitioner's argument rests on the incorrect assertion that counsel, Mr. Mercer, should have filed a motion to suppress the confession made to Detective Arnold, although the alleged coerced confession was obtained by the Walmart loss-prevention employee. Coercive police activity is a necessary element for finding that a confession was involuntary. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." (*Id.* at 164.)  Because Petitioner

presents no evidence of police coercion, which would have caused her will to be overborne, Mr. Mercer would have been unsuccessful if he had filed a moton to suppress statements made to Detective Arnold. Based on the totality of the circumstances, it is objectively reasonable to conclude that Petitioner's waiver of her *Miranda* rights when she confessed to Detective Arnold was knowing and intelligent and her statements were made freely and voluntarily. Thus, any motion to suppress the confession would have been without any merit.

Even if the state court could reasonably have found that Detective Arnold used coercion to obtain Petitioner's confession, Petitioner has not established that Mr. Mercer's failure to file the motion to suppress prejudiced the defense, as required by *Strickland*. Even absent a confession to Detective Arnold, testimony regarding Petitioner's first confession to her employer's loss-prevention employee likely would have resulted in Petitioner's conviction.

In her reply, Petitioner argues that her confession to Detective Arnold was fruit of the poisonous tree based on deceit by the loss-prevention employee. (ECF No. 17 at 3.) She says the loss-prevention employee was deceptive by telling Petitioner that the DVD showed her stealing pills from the pharmacy and that within minutes after being confronted by the loss-

prevention employee, Detective Arnold interviewed Petitioner and told her that he had the DVD. (Id.)  The doctrine of the fruit of the poisonous tree, however, has not applicability to this situation.

The fruit of the poisonous tree doctrine is a court-made exclusionary rule that forbids the use of evidence in court if it is the product, or fruit, of a search, seizure, or interrogation carried out in violation of the defendant's constitutional rights. *Wong Sun v. United States*, 371 U.S. 471, 485–87 (1963); *United States v. Terzado-Madruga*, 897 F.2d 1099, 1112–13 (11th Cir. 1990) (fruit of the poisonous tree doctrine applies to physical and verbal evidence obtained in violation of the accused's Fourth, Fifth, and Sixth Amendment rights); *Craig v. State*, 510 So. 2d 857, 862 (Fla. 1987), *cert. denied*, 484 U.S. 1020 (1988). Here, however, the problem is that Petitioner says that her confession to Detective Arnold was the result of deceptiveness by the loss-prevention employee. Petitioner does not contend that the loss-prevention employee somehow violated her constitutional rights, nor could she. Thus, Petitioner has not shown that there is a reasonable probability that the result of her case would have been different, but for Mr. Mercer's failure to file a motion to suppress.

In light of the reasons set forth above and the double deference that applies to a *Strickland* claim, Petitioner has failed to "show that the state

court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Accordingly, ground one does not warrant habeas corpus relief.

## B.    Ground Two: Equal Protection Violation

Petitioner also asserts that she is entitled to federal habeas relief because "her Equal Protection rights were violated pursuant [to] the 14th Amendment when the Honorable Judge Wright rendered disparate treatment when sentencing her and her co-defendant, Priscilla Nobles." (ECF No. 4 at 16.)  Petitioner argues that the trial judge accepted her co-defendant's negotiated plea with the State, but refused to "accept the petitioner's plea bargain from the State for the same sentence," even though both defendants had no previous criminal history. (*Id.* at 16–17.) Petitioner ultimately was sentenced to eight years' imprisonment, with a three-year mandatory minimum, while Ms. Nobles (the co-defendant) was only sentenced to the three-year minimum mandatory for the same offense. (ECF No. 13-1 at 196.)  Respondents argue that this claim is unexhausted, procedurally defaulted, and does not present an issue cognizable in federal habeas. (ECF No. 13 at 26.)

Petitioner presented this claim to the state circuit court as Ground Seven of her amended motion for post-conviction relief. (ECF No. 13-1 at 196.) The circuit court denied relief, explaining that "this claim of trial court error is not cognizable in a motion for postconviction relief; it is procedurally barred and should have been raised on direct appeal." (*Id.* at 362 (citing *Johnson v. State*, 985 So. 2d 1215 (Fla. 1st DCA 2008); *Krawczuk v. State*, 92 So. 3d 195, 207 (Fla. 2012).)

In addition to addressing the procedural bar, the court also addressed the claim on the merits, stating that Petitioner "and her co-defendant were not equally culpable in the offense. . . . [Petitioner] was more educated, was paid more, and was entrusted with more responsibility" because she was a licensed pharmacist, while her co-defendant was only a pharmacy technician. (*Id.*)

Petitioner appealed this ruling to the First DCA (*Id.* at 451.) The First DCA *per curiam* affirmed without opinion, leaving the circuit court's ruling as the last reasoned opinion addressing Petitioner's claim. (*Id.* at 469.) Thus, Petitioner argues that her equal protection claim was properly exhausted because the state circuit court addressed and rejected the claim on its merits. (ECF No. 17 at 4.)

Ordinarily, "[w]hen a state court ignores a procedural default and

chooses to address the merits of a defendant's defaulted claims, . . .

federal courts cannot apply the procedural bar on the state's behalf."

*Freeman v. AG*, 536 F.3d 1225, 1231 (11th Cir. 2008).

As Respondents properly note, however, it is only when "state courts

have ignored any procedural bar and rejected a claim on the merits – not in

the alternative but *as the only basis of decision* – that [the] claim is not

barred from federal habeas review." *Davis v. Singletary*, 119 F.3d 1471,

1479 (11th Cir. 1997) (emphasis added). Here, the state circuit court

addressed the merits of Petitioner's claim only as an alternative to the

procedural bar*.* (ECF No. 13-1 at 362.) In other words, the secondary

ruling on the merits of Petitioner's claim was not the *only* basis for the

decision. (*Id.*)

Consequently, Petitioner must have exhausted state remedies to be

able to raise this claim on federal habeas by having "fairly presented" every

issue raised in her federal petition to the state's highest court, either on

direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351

(1989). Furthermore, the state petition must have made the state court

aware that the claims asserted do, in fact, raise federal constitutional

issues. *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). Here,

Petitioner never raised this claim as an issue in the trial court or on direct

appeal, and *a priori* the Petitioner did not assert claims raising federal constitutional concerns. (ECF No. 13-1 at 26–58, 72–124).

Petitioner no longer has the option to exhaust her federal claim in state court. Because Petitioner never raised the claim in the trial court or direct appeal, Petitioner cannot return to state court to properly exhaust this claim by second direct appeal. *See Hall v. State*, 823 So.2d 757, 763 (Fla. 2002) ("an issue not raised in an initial brief is deemed abandoned.") Petitioner also cannot assert the federal claim in another motion for postconviction relief because such a claim would be untimely and successive. Rule 3.850 motions must be filed no more than two years after the judgment and sentence become final. Fla. R. Crim. P. 3.850(b).  Since the First DCA's mandate affirming Petitioner's judgement was issued on March 2, 2012, Petitioner's two-year deadline already has expired.

In addition, the rule for postconviction relief also prohibits successive motions on the same grounds for relief. Fla. R. Crim. P. 3.850(h)(2). It is also too late for Petitioner to file a Rule 3.800 motion to reduce or modify her sentence because such a motion must be filed within 60 days after a mandate is issued by the appellate court affirming the judgment and sentence. Fla. R. Crim. P. 3.800(c). In short, Petitioner cannot return to state court to properly exhaust this claim by either motion or second direct

appeal.

Because Petitioner failed to properly exhaust this claim in the state courts, "and now is undeniably barred by firmly established and consistently applied state procedural rules from raising them, the claims are procedurally defaulted." *Henderson v. Haley*, 353 F.3d 880, 891 (11th Cir. 2003).

A procedurally defaulted claim like Petitioner's can support federal habeas relief in only two narrow situations. *See Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief" on an unexhausted claim "is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."). First, the petitioner may demonstrate cause and prejudice for the default. *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him . . . ." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Attorney error that constitutes ineffective assistance of counsel violative of the Sixth Amendment can render "cause." *Murray v. Carrier*, 477 U.S. 478, 487 (1986). But, an ineffective assistance of counsel claim must generally be presented to the

state courts as an independent claim before it can be used to establish cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (citing *Murray*, 477 U.S. at 489). In such case, unless the prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, the ineffective assistance of counsel claim cannot serve as cause for another procedurally defaulted claim. *Id.* at 453. To show prejudice, the petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

Second, the petitioner may show that enforcing the procedural default would result in a fundamental miscarriage of justice. *Mize*, 532 F.3d at 1190. To show a fundamental miscarriage of justice, the petitioner must show that in light of new evidence, no reasonable juror would have convicted her. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

In this case, Petitioner has failed to demonstrate cause and prejudice for the default and has also failed to demonstrate a fundamental miscarriage of justice. Petitioner does not address the procedural default in her Petition or reply, and therefore does not offer any legal argument showing cause for or actual prejudice resulting from the default. (ECF Nos.

4, 17.) Moreover, nothing in either her Petition or reply even suggests that her failure to present this claim to the state court was the result of something external to her, such as ineffective assistance of counsel by appellate counsel.  And without cause, there can be no prejudice. Likewise, nothing suggests that there is any new evidence relevant to her claim that would result in a fundamental miscarriage of justice by enforcing the procedural default. Petitioner is, therefore, barred from bringing this claim in federal court.

Nonetheless, even assuming Petitioner had fully exhausted state remedies and her claim was not procedurally defaulted, her claim fails on the merits. Respondent contends there is no clearly established federal law supporting the principle that disparate sentencing of co-defendants violates equal protection. (ECF No. 13.)  Respondent concludes that Petitioner cannot show that the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established federal law. (ECF No. 13 at 26.)

In *Howard v. Fleming*, the United States Supreme Court considered whether a state trial court violated the constitutional guarantee of equal protection during the sentencing of three co-defendants convicted of conspiracy. 191 U.S. 126, 126 (1903). Specifically, two co-defendants were

sentenced to ten years' imprisonment while the third co-defendant was sentenced only to seven years' imprisonment for the same crimes. (*Id.* at 135.) The Supreme Court held that, while the Fourteenth Amendment prohibits different or higher punishment to be imposed on one than is imposed on all for like offenses, "[d]oubtless there were sufficient reasons for giving to one of the conspirators a less term than the others." (*Id.* at 136.) The Court added that either way, "there is no such inequality as will justify us in setting aside the judgment against the two." (*Id.*)

Thus, *Howard* did not clearly establish that a sentencing court's imposition of a more severe sentence upon a *less culpable* co-defendant violates the Equal Protection Clause.  Moreover, as the state circuit court reasoned, Petitioner was more culpable for the crime than her co-defendant because of her position of authority, her access to the drugs, and her education. (ECF No. 13-1 at 362.) Indeed, at Petitioner's sentencing, the trial judge stated, "[w]e have laws against these kinds of drugs because they're dangerous and nobody knows how dangerous they are anymore than a pharmacist." (*Id.* at 55.) Therefore, there were more than "sufficient reasons" to hold Petitioner was more culpable than her co-defendant. Petitioner's failure to prove by clear and convincing evidence that the court's imposition of a higher sentence was "objectively

unreasonable" fails to rebut the presumption that the state trial court's determination was correct. Accordingly, ground two does not warrant habeas corpus relief.

## C.    Ground Three: Vindictive Sentence

In her final claim, Petitioner asserts "that the trial court violated her [Fourteenth] Amendment right to Due Process by participating in plea negotiations in her case and by imposing a vindictive sentence upon the petitioner for his refusal to accept the proposed offer by the State of three years in the Department of Corrections." (ECF No. 4 at 17.) Petitioner claims that she and the State had negotiated a plea deal, which would have required her to only serve a three year sentence. (*Id.*) The trial court judge, however, rejected the offer and told Petitioner's attorney during a pretrial conference that "this might be one of those cases where she's going to have to plea straight up or go to trial." (ECF No. 13-1 at 82.)

Petitioner's vindictiveness claim is based on the premise that the judge "impermissibly imposed his opinions, his preconceptions, and his values during the plea bargain process," which resulted in a longer sentence than the one proposed by the plea agreement. (ECF No. 4 at 18.) Petitioner further asserts that "there were no facts that reasonably justified" the imposition of a longer sentence, so only judicial activism and the

"judge's personal disposition about the possible evils of drug trade" influenced the decision. (*Id.*)

Petitioner presented this claim to the First DCA on direct appeal. (ECF No. 13-1 at 85.) Similar to the arguments raised in Petitioner's federal habeas petition, Petitioner argued in her appellate brief that "'when the judge has been involved in the plea negotiations and then later imposes a harsher sentence, the sentence is presumed to be vindictive.'" (*Id.* (quoting *McDonald v. State,* 751 So. 2d 56, 59 (Fla. 2d DCA 1999).)

The appellate court affirmed Petitioner's judgment and sentence *per curium* without opinion. (*Id.* at 167.) Respondent concedes that the First DCA's decision constitutes an adjudication of Petitioner's claim on the merits with the meaning of 28 U.S.C. § 2254(d). (ECF No. 13 at 28); *see also Harrington*, 562 U.S. at 98 (The state court is required only to reject a claim on the merits, not to provide an explanation or statement of reasons.); *Wright*, 278 F.3d at 1254 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").  Respondent argues that the state court's decision on the merits is not contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the

United States." (*Id.* at 38–39); § 2254(d)(1).

In this case the record does not support a finding that the state court's decision on Petitioner's vindictiveness claim was contrary to or involved an unreasonable application of clearly established law. A vindictive sentence is imposed where the defendant is punished for exercising her appellate rights or where any judicially imposed penalty needlessly discourages assertion of the Fifth Amendment right not to plead guilty and deters the exercise of the Sixth Amendment right to demand a jury trial. *U.S. v. Jackson*, 390 U.S. 570, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968). Such a sentence is patently unconstitutional. *Id.* A presumption of vindictiveness exists in those cases where a defendant receives an increased sentence following re-conviction after successful appeal from a conviction. *Wasman v. U.S.*, 468 U.S. 559, 104 S. Ct. 3217, 82 L. Ed. 2d 424 (1984). Where the presumption applies, the sentencing authority or the prosecutor must rebut the presumption that an increased sentence or charge resulted from vindictiveness; but in all cases where the presumption does not apply, the defendant has the burden of proving actual vindictiveness. Therefore, because the instant case does not involve an increase of any previously imposed sentence, Petitioner bears the burden of establishing actual vindictiveness to prevail.

As Respondents properly note, the transcript from Petitioner's pretrial conference—the factual predicate on which Petitioner has constructed her allegation that the sentence imposed by the trial court was vindictive—shows that "the State and Petitioner had not agreed to the terms of any plea offer, much less one which required her to serve three years in state prison." (ECF No. 13 at 31.)  Notably, the record evidences that Petitioner never even attempted to enter a plea at the pretrial conference. (ECF No. 13-1 at 10–12.) Rather, Petitioner's counsel sought a continuation of the case to allow Petitioner and the State additional time to consider a plea agreement that would require a three to five year sentence. (*Id.* at 11.) The conversation among the parties and the trial judge during the pretrial conference supports this contention:

> MR. MERCER: Right now she's charged with that, the maximum trafficking, first degree. But we're looking, we're considering doing something different than that. We were looking at something along, we were looking at something between 3 and 5 is what we were looking at.
>
> THE COURT: This might be one of those cases where she's going to have to plea straight up or go to trial. I mean that's – I know with trafficking you can move for substantial assistance and I have to consider that. But I'm just going ahead and telling you up front I am, this is the first time there has been any talk of a plea, so I haven't said anything, but this is – I don't think there's anything improper about me doing that. I think as a judge I can do that. I'm just saying that I don't know what I'm going to do. I'm just saying that I think at this point she can plea straight up or go to trial. I just have to go ahead and let y'all know that and do

> whatever y'all got to do. I don't think it's improper for a judge to say that. You are the prosecutor, you can change the charge. You can certainly reduce the charge. You can do anything you want to. But I think, at this point, I want to let you know where, that's where I'm at.

(*Id.* at 10–11.) During the same conversation, the State prosecution agreed that it needed more time to "let the State make a . . . final decision on where this case should be." (*Id.* at 11.)

Ultimately, Petitioner and the State entered a plea agreement, the terms of which included pleading guilty to a lesser trafficking offense that carried only a three-year minimum mandatory rather than the 25-year minimum mandatory for the trafficking offense with which she was charged. (*Id.* at 22.) The plea also provided that she would be sentenced to "no more than 8 yrs. DOC." (*Id.* at 22-23, 27.) Because Petitioner was sentenced in accordance with the agreed-upon terms of the plea negotiation, there is no evidence that leads to a conclusion that the sentence was actually vindictive. Furthermore, there is nothing in the record to suggest that the trial court's imposition of an eight-year sentence for trafficking in hydrocodone or five-years for grand theft were the result of Petitioner having exercised a constitutional right.

However, insofar as Petitioner's Fourteenth Amendment claim can be construed to suggest that the sentence was predicated on an involuntary

guilty plea, the law was less than settled that the trial judge's comments

during the pretrial conference constitute participation in plea bargaining

negotiations and if so, whether such a determination would render

Petitioner's guilty plea involuntary. Although no federal courts reviewing

state procedures pursuant to writs of habeas corpus have specifically held

that it is a violation of due process for a state trial court to participate in

plea bargaining discussions, to avoid any appearance of impropriety in the

procedure leading up to the time that a defendant enters a plea of guilty,

some state courts have expressed their strong disapproval of any

participation by the trial court in plea negotiations because of the potential

coercive effect such participation might have on defendants, with some

courts going so far as to say that a judge must never indicate in any way

whether he would accept an arrangement worked out between counsel for

the state and counsel for the defendant. *See, e.g.*, *State v. Buckalew*, 561

P.2d 289, 291–92 (Alas. 1977) (noting that trial judges are and should be

barred from engaging in either charge or sentencing bargaining, and it is

improper for a judge to accept a guilty plea over the objections of the

state); *People v. Clark*, 183 Colo. 201, 203 (1973) (finding it "highly

improper" where "the trial judge advised defense counsel, in the course of

the plea negotiations, that the defendant would be given an extremely

heavy sentence, or 'put away forever,' if he did not accept the district attorney's offer and went to trial and was found guilty.").

Other courts, influenced by particular state rules of procedure, have held that a judge is not prohibited from all participation in the process. *See, e.g.*, *Pierre v. Florida*, 114 So. 3d 319, n.3 (Fla. 4th DCA 2013) (quoting *Florida v. Warner*, 762 So. 2d 507, 513 (Fla. 2000)) ("Limited judicial participation in plea negotiations is permitted provided that certain safeguards are employed 'to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice.'").

However, even in those jurisdictions where the judge is authorized to enter into discussions concerning the possible bargain that might be reached between the state and the defendant, some courts have held that particular actions, statements, or promises, made by the trial court were so coercive as to require the withdrawal of the defendant's "involuntary" plea. *See, e.g.*, *United States v. Casallas*, 59 F.3d 1173 (11th Cir. 1995) (Trial court participated in plea-bargaining process improper where he allegedly coerced defendant's guilty plea to narcotics charge by, in effect, suggesting that defendant would face 10-year minimum mandatory term if

he pleaded guilty, contrasted to a 15-year minimum mandatory term if he did not). On the other hand, certain statements and actions of the trial court have been held not to render the defendant's plea involuntary, particularly when they could be characterized as an aid to the defendant in making a rational decision as to whether or not to plead. *See McCray v. McKune*, 208 Fed. Appx. 669, 671 (10th Cir. 2006) (State trial court's pre-plea discussion with defendant prior to its acceptance of his plea of guilty to two counts of aggravated kidnaping and two counts of aggravated robbery did not coerce defendant into entering into plea bargain and did not violate defendant's right to due process.). The defendant must be able to affirmatively show that what the judge did was actually part of the plea bargaining process in order to prevail on a contention that judicial conduct rendered the plea involuntary. *See Blackmon v. Wainwright*, 608 F.2d 183, 184–85 (5th Cir. 1979) (affirming the denial of the defendants petition for a writ of habeas corpus and stating that it agreed with the state court's conclusion that the judge did not intend to participate in plea negotiations at all and that no statements which she made to the defendant or to the defendant's attorney could in any way be construed to have been a promise to the defendant as to the jail sentence he would receive, either should he plead guilty, or should he proceed to trial).

The doctrinal history examining judicial participation in plea agreements illustrates that, while it is clear that guilty pleas entered pursuant to plea bargaining must be entirely voluntary and that it is a violation of due process where such a plea is obtained by coercion or by deception, there is no "clearly established Federal law" that render it a violation of due process for a state trial court to make comments about the plea bargaining discussions. Therefore, the First DCA's affirmance of Petitioner's sentence and judgment, effectively disposing of Petitioner's vindictiveness claim, is not "contrary to, or . . . an [objectively] unreasonable application of, clearly established Federal law, as determined by the Supreme Court."

Lastly and most notably, the record does not suggest that the trial judge actually participated in the bargaining process by simply stating that "[t]his might be one of those cases where she's going to have to plea straight up or go to trial." (ECF No. 13-1 at 11.)  Accordingly, Petitioner is not entitled to habeas relief on ground three.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the

specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED** that**:**

1.    The First Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By A Person in State Custody, ECF No. 4, should be **DENIED**.

2.    A certificate of appealability should be **DENIED.**

**IN CHAMBERS**  this 16th day of December, 2016.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.